## STRAIN v ISAACS

Ohio Appeals, 7th Dist, Mahoning Co

No 2452. Decided April 15, 1938

Shelly M. Strain, Youngstown, for appellant.

K. H. Powell, Youngstown, and Louis Gelbman, Youngstown, for appellee.

516

## OPINION

By NICHOLS, PJ.

May 24, 1935, Shelly M. Strain, plaintiff-appellant herein, filed action in the Court of Common Pleas of Mahoning County praying judgment against William Isaacs defendant-appellee herein, in the sum of $4258.00, which plaintiff claimed was due him under a written contract of lease alleged to have been executed March 25, 1929, between plaintiff and one Mike Rosso, whereby two store rooms, known as Numbers 909 and 911 Market Street, Youngstown, Ohio, were leased by plaintiff to Rosso for the term of five years, beginning April 1 1929, and wherein it was provided that the rental for the first two years was $110.00 per month and for the remaining three years was $135.00 per month, payable in advance; that this lease was assigned by Rosso to the defendant, who entered into the possession of the premises, assumed the lease, conducted a restaurant business in the leased premises, and paid the rent under the terms of the lease until November 1, 1930; that on or about June 9, 1931, defendant abandoned the premises and plaintiff, under protest and against his will, took possession of the premises; that when defendant abandoned the premises the same were in no condition for occupancy by reason of the rubbish, filth, and dirt left therein by defendant, whereas the lease provided that the premises be left thoroughly clean, all rubbish to be removed therefrom, and in suitable condition for the immediate occupancy by lessor or his lessee.

After further alleging that in two separate actions brought by plaintiff against defendant in the Common Pleas Court of Mahoning County he had recovered judgment on the merits thereof for rents due for the months of November and December, 1930, and for the months of January, February, March, April, May and June, 1931, and in which actions it was found by the court that the lease was valid and that the defendant had duly assumed the lease, plaintiff further alleged:

"that, by reason of the abandonment of said premises for the last two year and ten month period of said lease, he was damaged in rental value in the sum of $4590.00 with a credit of $480.00 being the amount of rentals realized by this plaintiff during the said two year and ten month period.

"Plaintiff further says that he was damaged in the sum of $150.00 for the cleaning, scrubbing, removal of trash, and filth from said premises, making necessary repairs and painting the interior of said premises, so that it would be in suitable condition for occupancy, as provided in said lease.

"Wherefore plaintiff prays judgment against the defendant for the sum of $4258.00 and for court costs ⁂."

Summons, endorsed "Action for money; amount claimed $4258," was duly issued upon the praecipe attached to plaintiff's petition, and summons was, according to the sheriff's return endorsed thereon and set forth upon the transcript of the docket and journal entries filed herein, duly served upon "the named defendant, William Isaacs by delivering to him personally a true and certified copy thereof with the endorsements thereon," the answer day named in the summons being June 22nd, 1935.

The defendant failed to answer, demur or file motion to the petition of plaintiff.

July 26, 1935, the following proceedings were had in the action as shown by the transcript of the journal entry:

"Now comes the plaintiff and the defendant being in default for answer and demurrer the court find that the allegations of the petition are confessed by him to be true.

"The court further find that the plaintiff is entitled to recover his damage by reason of the premises set forth in his petition from the said defendant, and the court assesses said damages at four thousand two hundred fifty-eight dollars ($4258.00).

"It is therefore considered, ordered and adjudged that plaintiff, Shelly M. Strain, recover from the defendant, William Isaacs, the said sum of $4258.00 and his costs herein taxed at $........"

June 23, 1936, praecipe for execution on this judgment was filed by plaintiff in the clerk's office, upon which execution was duly issued and on June 30, 1936, was returned, endorsed, "No goods or chattels found whereon to levy", and showing levy made by the sheriff on certain described real estate in Mahoning County.

Thereafter, plaintiff filed an affidavit for proceedings in aid of execution, which proceeding was subsequently dismissed.

August 14, 1936, certificate of judgment for lien upon lands was issued by the clerk and docketed in the judgment docket. About the same time plaintiff filed a new

action in the Common Pleas Court against William Isaacs, wherein he set forth the judgment obtained by him on the 26th day of July, 1935, against William Isaacs, and the judgment is in full force and wholly unpaid and unsatisfied, and further alleged that on the 20th day of June, 1935, William Isaacs conveyed to his daughter, Louise Isaacs, certain specifically described real estate, being the same real estate upon which the sheriff had levied execution, as hereinbefore related.

Plaintiff's petition further alleged, in substance, that two deeds executed by William Isaacs to his daughter, conveying such premises, were not executed according to the formalities required by law in that the grantee is one of the two subscribing witnesses to the deeds; and that these deeds were made, executed, delivered and accepted in contemplation of insolvency and with intent to hinder, delay and defraud the creditors of William Isaacs and were in fact without actual consideration. That action is still pending.

Shortly after filing his action to set aside the conveyances from William Isaacs to his daughter, plaintiff caused to be issued out of the clerk's office a writ of venditioni exponas to the sheriff of Mahoning County who caused the premises previously levied upon to be appraised and advertised for sale. Before the dates fixed for the sale of the premises by the sheriff, Louise Isaacs and William Isaacs filed their action in the Common Pleas Court of Mahoning County against Shelly M. Strain and Ralph Elser, sheriff of Mahoning County, alleging in their petition that Shelly M. Strain had theretofore, on the 25th day of July, 1935, "recovered a judgment against the defendant, William Isaacs" that execution was issued on such judgment on the 24th of June, 1936, and a land levy was attempted to be made on property of William Isaacs on the 20th of June, 1936; that Shelly M. Strain subsequently filed his action to set aside the deeds made by William Isaacs to his daughter, Louise Isaacs, and further that the land levy attempted to be made by the sheriff on the 30th day of June, 1936, "was of no force and effect for the reason that prior to the time the defendant, Shelly M. Strain, obtained a judgment against the plaintiff, William Isaacs said plaintiffs transferred and conveyed all the property attempted to be levied upon, and that he owns no real estate," and further alleging that at the time the writ of venditioni exponas was issued, based upon the land levy made June 30, 1936, William Isaacs, in

truth and in fact, had no real estate upon which to levy. After further alleging that the sheriff is about to proceed to sell the real estate under the writ of venditioni exponas, the prayer of the petition is that the defendants be enjoined from proceeding with the sale and enjoined from in any way interfering with the peaceable possession of the real estate by Louise Isaacs until adjudication of the action to set aside the deeds made to her by her father; and praying damages against Shelly M. Strain in the amount of $5,000.00 for illegally issuing the writ of venditioni exponas.

It may be here noted that neither in the petition of William Isaacs and Louise Isaacs to enjoin Strain and the sheriff from selling the real estate levied upon; nor in any other proceedings hereinbefore referred to was any question made as to the legality of the judgment recovered by Strain against Isaacs on the 26th day of July, 1935.

On or about the 10th day of November, 1936, petition was filed by William Isaacs against Shelly M. Strain in the Common Pleas Court of Mahoning County, under a new file number, wherein William Isaacs alleged that on the 25th day of July, 1935, in the action first hereinabove referred to, the Court of Common Pleas entered a default judgment in favor of Shelly M. Strain against William Isaacs in the sum of $4,258.00 and costs, and further alleged "that there was irregularity in obtaining said judgment, and fraud practiced by the successful party in obtaining the said judgment, as hereinafter fully set forth." Then follows an allegation to the effect that the sheriff never delivered the summons to William Isaacs and never served him with the same in the action wherein the default judgment was rendered.

This petition further alleges that Shelly M. Strain had previously sued William Isaacs for rent for November and December, 1930, and January, 1931, under the alleged lease assigned to William Isaacs, and recovered judgment therefor.

The petition further alleges, in substance, that the alleged lease from Strain to Mike Rosso was in fact void in that it provides that the same shall not be assigned by Mike Rosso without the consent of Strain, in writing, endorsed thereon, and that Strain never consented in writing to the assignment to William Isaacs; that in the event it should transpire that Strain did consent to the assignment of the lease, Isaacs was under no obligation thereon for the reason that the assignment and consent thereto were never filed for record with the Re-

corder of Mahoning County.

It is further alleged in this petition that the alleged lease is void for the further reason that the same was executed to "Mike" Rosso and was in fact signed by "Miche" Rosso; and for the further reason that a "schedule" attached thereto was not witnessed or notarized as required by law.

A further allegation of the petition is to the effect that Strain had obtained judgment against Isaacs in a previous action for the rents under the alleged lease for February, March, April, May and June, 1931, which judgment was obtained by fraud in that the defendant (Strain) knew, as an attorney at law, "that a single cause of action could not be split into two or more causes of action, and * * * knew that two or more actions could not be sustained against the same party on a single cause of action; and * * * knew that if he sued for a part of his claim a judgment obtained by him in that action is a bar to a second action for the residue of the claim," and that Strain has filed three suits for the same cause of action.

The prayer of the petition is that the judgment rendered in favor of Strain against Isaacs, July 26, 1935, be set aside and held for naught.

This petition of Isaacs against Strain was apparently stricken from the files on motion of Strain, and thereafter an amended petition was filed by William Isaacs, upon leave of court, wherein, he set forth that in the first action, hereinabove referred to, Strain obtained a judgment by default against Isaacs for the sum of $4280.00 and costs; and further alleged certain irregularities in the taking of the judgment by Strain in the original action, but a demurrer interposed by Strain to this amended petition, on the ground that a separate action did not lie to set aside a judgment on the ground of irregularity, was sustained and the action dismissed.

Thereafter William Isaacs filed in the original action wherein Strain obtained the judgment a "petition", bearing the title "William Isaacs, plaintiff, v Shelly M. Strain' defendant," wherein Isaacs alleged the judgment obtained against him by Strain by default for the sum of $4280.00 and costs, and further alleged as follows:

"Plaintiff further says that there was irregularity in obtaining said default judgment in the following respects, to-wit: "Plaintiff says that Shelly M. Strain,

an attorney at law, practicing before this court, knew, or should have known, the existence of the following rule of this court:

"'Rule XIV 1. DEFAULTS. If a party neglect to file the proper pleading within the time provided by statute or on expiration of leave granted by the court, he shall be held to be in default, and the fact of such default shall be noted by the assignment commissioner and brought to the attention of the court and such party may be proceeded against accordingly by judgment on default or dismissal for want of prosecution as the case may require.'

"Plaintiff further says that said petition in case No. 93655, '(Being the original action first hereinabove mentioned)' on its face, purports to be a claim for unliquidated damages, and that the default of William Isaacs was not noted by the assignment commissioner and brought to the attention of the court as required by said rule, and that a default judgment for unliquidated damages was entered by the court without any hearing, as required by the said rule of court.

"Wherefore plaintiff prays that the judgment in case No. 93655 be set aside and held for naught, and a final judgment be rendered in favor of this plaintiff against the defendant herein, and for such other and further relief as to this court seems just and proper."

January 15, 1937, Shelly M. Strain filed in case No. 93655 what he denominated "remittitur", wherein he voluntarily remitted from the judgment rendered in his favor July 26, 1935, the sum of $150.00 with accrued interest thereon, being the amount recovered as his damages for the cleaning, scrubbing, removal of trash and filth from the leased premises, and making the necessary repairs and painting, as alleged in his petition and carried into the judgment recovered by him for $4,258.00, plaintiff consenting that such judgment be reduced in the sum of $150.00, leaving the amount thereof $4,108.00 with interest from the original date of the judgment.

February 5, 1937, hearing was had in Common Pleas Court of Mahoning County, before the Honorable David G. Jenkins, one of the judges of that court, upon the socalled petition to vacate the judgment rendered in favor of Strain on July 26, 1935, the parties being present in court, counsel for Mr. Isaacs called to the attention of the court "Rule XIV," as hereinabove quoted from the petition to vacate judgment, and counsel, after introducing the rule in evi-

dence, further stated into the record that he was not familiar with how the judgment was taken "except that I was told default entry was made by filing of journal entry."

The following is shown by the bill of exceptions:

"MR .GELBMAN: Will you admit, Mr. Strain, that on the day the journal entry was filed wherein judgment was rendered in favor of Mr. Strain and against Mr. Isaacs, that you presented the court with a journal entry and the court signed it, in which you journalized the judgment against Isaacs for the amount set forth therein, and that the court signed that journal entry?

"MR. STRAIN: I am letting the record speak for itself.

"MR. OSBORNE: If I understand that, if the record speaks for itself, then there is an illegality. If the record does not show the rule of the court was followed in that the assignment commissioner brought this to the attention of the court, then the judgment taken was illegal, and I am now speaking of illegalness of taking money judgment.

"COURT: As I understand your position as to what evidence you were going to introduce, I take your position to be this, that you rely upon the court having before it all the entries and records of the case in which this case was filed. That's your evidence?

"MR. OSBORNE: Yes."

It was admitted into the record that at the time of the hearing in the proceeding in aid of execution Mr. Isaacs was present in court and testified in the matter. On behalf of Mr. Strain there were also admitted in evidence all the pleadings, papers, files and the docket and journal entries in case Number 96,548 and case Number 97874, together with the deposition of William Isaacs and Louise Isaacs taken in case Number 96548, including a contract between William Isaacs and Louise Isaacs attached to the deposition.

Case Number 96548 is the action brought by Shelly M. Strain against Louise Isaacs and William Isaacs to set aside the conveyances, hereinbefore referred to. Case Number 97874 is the action brought by Louise Isaacs and William Isaacs against Shelly M. Strain to enjoin the sale of property under the writ of venditioni exponas, hereinbefore referred to. On behalf of Mr. Strain there was admitted in evidence the

two deeds from William Isaacs to his daughter Louise Isaacs. The record of two other cases, numbered 97941 and 98395, in which the same parties have had or have litigation in the Common Pleas Court of Mahoning County, were also admitted in evidence.

Case Number 97941 is the separate action brought by William Isaacs against Shelly M. Strain to set aside the judgment in question, which action was dismissed on motion of the defendant therein.

Case No. 98395 is the action brought by William Isaacs against Shelly M. Strain to recover back the amount paid by William Isaacs in satisfaction of a judgment obtained against Isaacs by Strain for rent under the lease, in which action a demurrer to the petition was sustained on the ground that it did not state a cause of action.

Mr. Strain renewed his offer of remittitur of $150.00 of the judgment in question. On behalf of Mr. Strain there was read into the record §2 of Rule XIV, not necessary herein, as set forth.

"MR. GELBMAN: Further, the defendant would like to offer in evidence for the purpose of this record, the pleadings and proceedings in this case, No. 93665.

"COURT: They are before me now. I am trying a motion in the case and naturally the entire record in this case is before me."

Aside from the evidence to which we have referred, the remainder of the bill of exceptions relates to the legal claims of the parties.

We have at some length set forth all the evidence contained in the bill of exceptions, from which it is seen that no evidence was offered or admitted to show whether or not at the time judgment was entered in favor of Mr. Strain against William Isaacs, July 26, 1935, in case Number 93655, the court heard testimony or had before it evidence upon which the court, as shown in the quoted entry of judgment, "assesses the damages" to Mr. Strain at $4,258.00.

October 18, 1937, as shown by the transcript, the following entry was made upon the journal of the Common Pleas Court:

"This day this cause came on to be heard or the petition filed by the defendant in this action to vacate a default judgment rendered herein on July 26, 1935, in favor of the plaintiff, and

"It appearing to the court from the evi-

dence, the argument of counsel and the briefs submitted herein that the said petition should be treated as a motion to set aside the judgment and should be sustained for irregularity in obtaining same, and

"It further appearing to the court that the answer of the defendant as tendered sets out a prima facie defense to the action.

"It is therefore ordered, adjudged and decreed that the judgment rendered on the 26th day of July, 1935, in this cause, be and the same is hereby vacated conditionally and that all liens and securities obtained under it shall be preserved to the modified judgment, and that the defendant be given leave to file his amended answer instanter.

"Exceptions to the plaintiff."

From the judgment shown in the last quoted entry, Shelly M. Strain has duly prosecuted his appeal on quesions of law to this court, on the ground that there is no evidence in the record upon which the court is authorized to vacate his judgment of July 26, 1935, and that the judgment of the court from which appeal is taken is contrary to law.

It is observed that in the entry wherein the judgment of July 26, 1935, is conditionally vacated, the only ground mentioned is "for irregularity in obtaining same", the particular irregularity not being designated and no facts being set forth in the entry other than that it appeared to the court "from the evidence", which statement must be construed to mean the evidence set forth in the bill of exceptions, wherein the only irregularity shown is that the judgment was taken before the case was regularly assigned for hearing in the Common Pleas Court in accordance with Rule XIV hereinbefore quoted from the petition or motion to vacate.

Sec 11634, GC, provides that:

"* * *the motion to vacate a judgment because of its rendition before the action regularly stood for trial can be made only in the first three days of the succeeding term."

The petition to vacate herein, which the court considered as a motion to vacate, was not made within the first three days of the succeeding term but was made almost two years thereafter, to-wit, February 11, 1937, several terms of the Common Pleas Court intervening. By an answer filed to this so-called petition, Mr. Strain alleged, among other things, that his judg-

ment was obtained according to the statutes made and provided and that the irregularity set forth in the petition to vacate is barred by the statute. It must be held that irregularity in obtaining the judgment by reason of the fact that the █ same was entered before the case regularly stood for trial, in accordance with the rule of the Common Pleas Court, can not be relied upon because of the quoted provision of §11334, GC.

The real contention made by counsel for William Isaacs as the basis upon which the judgment of July 26, 1935, should be set aside is the claim that plaintiff's action upon the written lease referred to in his petition is one sounding in damages and that upon the default of Mr. Isaacs to answer or demur to plaintiff's petition, the court could only render judgment in favor of Mr. Strain upon a hearing first being had and proof being taken as to the amount of the damages, and in this connection counsel for appellee rely upon §11593, GC, which provides:

"In the determination of any cause, if the taking of an account, proof of a fact, or the assignment of damages, is necessary, the court may take the account, hear the proof, or assess the damages, or refer the cause to a referee or master for such proof, or direct the matter to be ascertained by a jury, as the action requires."

In connection with the above quoted section of the General Code, counsel also rely upon the provisions of §11384, GC, as follows:

"Cases in which there is an issue of fact, or damages to be assessed, shall be tried in the order in which they stand on the trial docket, unless * * * by the order of the court they are continued or placed at the heel of the docket, or for good cause shown, may be especially assigned for trial or hearing out of their regular order."

As hereinbefore stated, any irregularity in taking the judgment before the cause regularly stood for trial has been waived for failure to move for the vacation of the judgment on that ground within the first three days of the succeeding term. But it is contended by counsel for appellee that in any event, because plaintiff's action sounded in damages, the court was required to hear the case upon evidence submitted and from such evidence only determine the amount of the damages. As

hereinbefore stated, the bill of exceptions herein discloses that no evidence was offered or admitted upon the hearing of the petition to vacate tending to show whether or not at the time the judgment in favor of Mr. Strain was entered on July 26, 1935, the court heard testimony or had before it evidence from which to assess the damages to Mr. Strain in the sum of $4,528.00.

In brief and oral argument it is urged by counsel for appellee that the opinion of Judge Jenkins written at the time of the entry vacating the judgment shows the fact as to this proposition, but such opinion is not a part of the bill of exceptions and is not otherwise properly before this court for consideration. It is further urged by counsel for appellee that Judge Jenkins properly took judicial notice of the fact whether evidence had been received at a hearing wherein the court assessed the damages and that this court must take judicial notice of the same matter although not contained in the bill of exceptions.

We have no doubt that the trial court might properly take judicial notice of its own "records" in the particular case under consideration, but this is a much different proposition from saying that the trial judge might take judicial notice of facts within his own knowledge, the effect of which facts would be to impeach the record in the case. It is our opinion that the record of a judgment imputes absolute verity and that in the absence of any evidence introduced upon the hearing to vacate the judgment in question it must be presumed that in rendering the judgment the court proceeded according to the provisions of the Code. Again looking to the journal entry wherein the judgment in favor of appellant was entered we observe that the court, after stating that the defendant is in default for answer and demurrer, find that the allegations of the petition are confessed by him to be true, and the court further find that the plaintiff is entitled to recover his damages by reason of the premises set forth in his petition. But this is not all; the entry further shows that "the court assesses said damages" at $4,258.00. In the absence of any evidence to the contrary it must be held that the last quoted language conveys the meaning that the court judicially assessed the damages; that is, judicially determined in the manner provided by law the damages to which plaintiff was entitled under the allegations of the petition which were con-fessed by the defendant to be true. This confession of the truth of the allegations of the petition left nothing to be proven as to the validity of the lease set up in the petition or as to the fact that the defendant had not paid the rent thereunder or as to the fact that defendant had abandoned the premises, but left only to be assessed the amount of the damages to which plaintiff was entitled by reason of the facts so confessed to be true. Indeed, it may well be doubted whether plaintiff's action was in fact one sounding in damages insofar as it was sought to recover the amount of unpaid rents under the lease as distinguished from the amount expended by plaintiff for removing the filth, etc., alleged to have been left in the premises by defendant upon his abandonment thereof. Plaintiff having remitted the amount of the judgment recovered for the removal of the filth, etc., defendant could not thereafter claim to be prejudiced thereby, and only the amount of the judgment █ referable to the unpaid rents under the lease was properly a matter for the consideration of the court upon the motion to vacate, the remittitur having been made before the hearing on this motion.

In the case of **Wineburgh v Toledo Corporation, 125 Oh St 219, 181 NE 20**, it is held in the second syllabus by the court as follows:

"2. Where the plaintiff's petition is founded upon such defectively executed instrument, the fact that it contains a prayer asking that the unpaid rentals be awarded to him as damages for breach of contract does not change the character of the action."

In the opinion in the cited case, Jones, J., says:

"It is insisted by counsel for plaintiff in error that, although this be an action at law, it is not one for rentals, but for damages for breach of contract, and, as the prayer of the petition is for damages an attempt is made to distinguish the case from Richardson v Bates, supra. This argument is not tenable. The action is founded upon; the defective indenture, and it is upon that indenture and its proof that the plaintiff must rely in order to recover. * * 'Calling the unpaid rentals 'damages' does not change the character of the action, which clearly shows that whatever breach there was arose from the non-payment of rentals."

Wineburgh v Toledo Corp., supra, was an action upon a defective lease, but, as hereinbefore stated, defendant's failure to answer or demur to the petition in the instant case admitted the validity of the lease set up in the petition, admitted the abandonment of the premises by defendant at the date alleged in the petition, admitted the stipulated rental averred in the petition, and left nothing to be determined but the amount of rentals for that period of the lease remaining after the defendant ceased paying rent, being a matter of simple computation.

It may well be considered that although the petition called the unpaid rentals "damages", the action was in fact one upon a written instrument for the ▮▮▮▮ payment of money only, and that the defendant by his failure to answer or demur had confessed that there was due thereunder the amount set forth in plaintiff's petition, for which judgment was prayed and which amount prayed for was endorsed upon the summons served upon the defendant, leaving no issue of fact or assessment of damages requiring a hearing or proof. In this view of the case it may well be said that plaintiff's action comes within the provisions of §11383, GC, which is as follows:

"In an action upon an account, or written instrument for the payment of money only, or in foreclosure judgment may be entered at any time during the term after defendant is in default for answer, unless, for good cause shown, the court gives further time to answer."

The Hamilton District Court, in the case of John Rose v Jacob Creutz, 3 Ohio Dec. Repr., 109, held:

"A petition to collect money rent under a written lease may be verified by the plaintiff's attorney, if the instrument is in his possession, it being a written instrument for the payment of money only, within §113 GC."

The opinion in the cited case is as follows:

"The petition is verified by the attorney of plaintiff, because the instrument is in his possession. On petition being filed motion was made to strike from files, because the instrument being a lease is not for the payment of money only. Motion overruled. "On error Held: That such instrument when sued on for money rent only is a written instrument for the payment of money only, within the terms of the Code, §113 GC. Judgment below affirmed."

Sec 113 GC, as the same was at the date of the last cited decision, provided:

"3. When the pleading to be verified is founded upon a written instrument for the payment of money only, and such instrument is in the possession of the agent or attorney, the affidavit to a pleading may be made by the agent or attorney."

Under a similar provision of the New York Code of Civil Procedure, the Supreme Court, Appellate Division, Second Department, in the case of Trepagnier & Bros. v Rose, 46 N. Y. S. 397, distinguished between an insurance policy which was held not to be an instrument for the payment of money only, and other written contracts which contain obligations on the part of one party or the other party to pay money, "such as agreements of sale, hiring, leases, building contracts, etc.," and gave the following definition of an instrument for the payment of money:

"Whenever it shall appear that the primary object of any instrument was to assure to any person the payment of a certain sum of money upon a consideration that is no longer executory as to him, and where the only thing to be done to complete the contract is to pay the money for which the paper was primarily made, that we think may be said to be an instrument for the payment of money, under the provisions of this subdivision."

The instant action was one brought by appellee upon an instrument, the primary object of which was to assure to Mr. Strain the payment of a certain sum of money upon a consideration that is no longer executory as to him, and where the only thing to be done to complete the contract was the payment of the money for which the paper was primarily made, the amount of money payable being definitely stated in the contract, and the summons which was personally served upon the defendant was endorsed with the amount for which judgment will be taken if the defendant fails to answer, in compliance with §11281, GC.

Sec 11357, GC, provides that the verification of the petition applies in actions founded on contract for the payment of money only. That the instant action was upon contract there can be no doubt, and being a written instrument for the payment of money only, judgment might be entered at

any time during the term after the defendant is in default for answer.

But assuming that the action wherein appellee obtained his judgment was one wherein an assessment of damages required a hearing by the court and required proof to establish the amount of the damages, can the judgment be vacated without any evidence being received by the court upon the basis of facts within the mind of the judge only, but not a matter of record in the case? May the finality of the judgment be impeached because of some facts within the knowledge of the judge, not a matter of record and upon review in this court not carried into the bill of exceptions? This leads us to a consideration of what is meant by the term "judicial notice." Judicial notice is properly divided into (1) judicial knowledge and (2) common knowledge, to-wit, judicial knowledge that which the court must possess and take cognizance of; and common knowledge, that which the court may declare applicable to the action without the necessity of proof, and for the more speedy expedition of trials. Courts generally are required to judicially know the general statutory law of the forum as well as laws enacted and adopted by the paramount authority under which the court exists. Inferior courts are required to know the local regulations, municipal ordinances and town by-laws which it is their duty to administer. It has been held that state courts notice the unwritten law of the forum and of the state or county which at any time exercised jurisdiction over the forum, but the scope of judicial knowledge as distinguished from common knowledge, is that knowledge which the judge must have of the law governing the legal rights of the parties. On the other hand, that phase of judicial notice known as common knowledge is the knowledge that every intelligent person has. All well informed members of a community, including judges, lawyers and laymen possess knowledge of notorious facts and are said to have a common or general knowledge. The entire range of human knowledge, commonly accepted as true in the community for which the court sits, is regarded as generally known, and its correctness assumed. Except in contempt cases, judicial notice is taken only of those matters which are "commonly" known, and therefore individual knowledge of a fact upon the part of a judge, not a matter of common knowledge, will not dispense with proof of such fact and can not be resorted to for the purpose of supplementing the record. The reason for this is clear in the instant case, for if the judge is to vacate a judgment of record upon knowledge of a fact believed to be known to him without being called upon to judicially notice such fact at the time and incorporate the same in the record, no opportunity is afforded one claiming under the judgment to controvert the fact in the mind of the judge and no opportunity is presented for the reviewing court to have knowledge of such fact known to the judge but not commonly known.

In our opinion it was not required of one claiming under the judgment to support the same by proof of facts outside the record and Mr. Strain was within his rights when he had incorporated into the bill of exceptions his statement that he relied upon the record. If the judge believed he knew of some fact, not of common knowledge, impeaching the record of the judgment, he should have been called upon to testify to such facts, or, at least, to state the fact in the record so that it might be incorporated in a bill of exceptions, or to have made a finding of facts in the journal entry, in which event witnesses may have been called and testimony given which would have shown that the judge was mistaken as to the fact of which he alone took notice. If no hearing was had and no evidence taken upon which the court assessed the damages to plaintiff, we are at a loss to understand why evidence of such fact was not incorporated in the record and brought before this court by bill of exceptions for review. The certificate of the judge to the bill of exceptions imports absolute verity, and it must be held that there is no evidence in the record before us sufficient to warrant the Common Pleas Court in impeaching its own judgment after term. We are not disputing that in this jurisdiction the rule has been established that if the inferior court has properly taken judicial notice of a matter of law governing in the inferior jurisdiction this court may likewise take judicial notice thereof. See: **Strauss v Village of Conneaut, Vol. 13-23 Ohio Circuits .320.**

It is the holding of this court that there are no facts shown in the bill of exceptions, or of which we may take judicial notice, whereby we can find that no hearing was had or evidence taken by the trial judge in assessing the damages to which plaintiff was entitled under his petition upon default of the defendant for answer thereto. For our authority in this matter we refer you

to The Chamberlayne Trial Evidence, Second Edition by Leslie J. Tompkins, professor of law, New York University, Chs. 7 and 8; also 15 R.C.L., under the title "Judicial Notice", especially referring to p. 1060 and the cases cited.

We think the correct rule is stated in the opinion of the Supreme Court in the case of **Dallas v Ferneau, 25 Oh St 635,** from which we quote.

"It does not affirmatively appear on the record that no evidence was produced tending to prove the performance of the labor, or the sale and delivery of the goods, or the value of the several items, neither does the statement of the record necessarily exclude the presumption, that testimony was heard and considered by the court for the purpose named, and hence it will be presumed, where such presumption may be necessary to sustain the judgment of a court having jurisdiction of the person and subject matter, that such evidence was heard and considered."

Another matter deserving attention here relates to the claim of appellant that the trial court could not open up the judgment of July 26th, 1935, until the court first determined that a **valid** defense to the action existed in favor of defendant, as provided in §11637, **GC.** Defendant did not present his defense with the motion to vacate, but it appears from the entry of the court that subsequent to the hearing on the motion an answer was tendered by defendant and the only matter appearing with reference thereto in the entry ordering the judgment vacated is as follows:

"It further appearing to the court that the answer of the defendant as tendered sets out a **prima facie** defense to the action."

In **Bulkley v Greene, 98 Oh St 55,** it is held in the syllabus:

"1. When a petition to vacate a judgment is filed by a defendant, he must present therewith his defense to the action sought to be vacated. The grounds for vacation are heard and determined by the court upon the preponderance of the evidence, and if the defense is adjudged legally valid and the grounds be sustained, the order of modification or vacation of the former judgment is held in abeyance until the final determination of the issues joined in the original action."

In **Lee v Benedict, 82 Oh St 302,** it is held in the first paragraph of the syllabus:

"1. To enable a reviewing court to properly pass upon alleged errors occurring at a hearing of a motion in the Court of Common Pleas to vacate a judgment of a previous term for irregularity in obtaining such judgment, there should be presented a record including a finding of facts, or a bill of exceptions showing all the evidence given at the hearing."

In the opinion by the court in Lee v Benedict, supra, it is said:

"It was the duty of the trial court, therefore, on the hearing of the motion, before entering any judgment to first find and adjudge that there had been shown a valid defense to the action, and then, upon finding that the irregularity complained of had been proven, to suspend the judgment until the cause should be tried on its merits."

In the instant case we have a bill of exceptions duly certified by the trial court, containing all of the evidence introduced upon the motion to vacate. The trial court has not, upon such evidence, adjudged that there had been shown a valid defense to the action but apparently found that a subsequently tendered answer sets out a prima facie defense to the action. The subsequently tendered answer was not sworn to positively and scarcely attains the dignity in itself warranting an **adjudication** that the defendant had a valid defense to the action. Indeed, considering the evidence offered upon the hearing of the motion to vacate, we think the court must have found therefrom that no good reason was shown whereby defendant was prevented from making defense to the action, in accordance with the rules governing time for pleading, and that the defendant deliberately chose not to defend the action but to rely upon the conveyance made to his daughter as a means of preventing the collection of the judgment. This the court could reasonably have found from the sworn testimony of the defendant and his daughter, incorporated in the depositions which are a part of the bill of exceptions; and so far as this court is able to observe there is not a syllable of testimony in the record indicating that the defendant had any valid defense to the action but relied solely upon a proposed irregularity in taking the judgment in that it was taken contrary to the rule of the court and without a hearing to determine the amount due plaintiff.

Can it be said that all that need be done by a defendant who moves to set aside a judgment, rendered after personal service of summons and without any showing of good cause or reason for failure to defend, is the filing of an answer, not positively sworn to, and that therefrom the court may **adjudicate** that the defendant has a valid defense to the action although the hearing had by the court is barren of any evidence of a valid defense? We think not, and that the record before us was not sufficient for an adjudication by the trial court that the defendant has tendered a valid defense to the action.

It is manifest that, upon the record here presented, the judgment of the Common Pleas Court must be reversed for the reasons hereinbefore set forth.

From our examination of the record in this case, it is apparent from the admission of William Isaacs and his daughter, shown in the depositions which were incorporated in the bill of exceptions, together with the deeds admitted in evidence showing the conveyance from William Isaacs to his daughter, appellee elected not to defend plaintiff's action for unpaid rents under the lease but chose to make a conveyance of his property, without consideration, to his daughter, with apparent knowledge that no defense to the action existed but with the seeming purpose to defeat the collection of the judgment for rents, which conveyances were made two days before the answer day named in the summons personally served on the defendant.

It is also observed from the records which are made a part of the bill of exceptions that in two previous actions between the parties for rent under the lease the validity of the lease set up in plaintiff's petition had not been questioned and had been judicially determined.

It is the conclusion of this court that there is manifest error upon the face of the record wherein the Common Pleas Court vacated the judgment of July 26, 1935, that there is no evidence in the record justifying such vacation, and that this court should render the judgment which the trial court should have rendered upon the motion to vacate; and coming now to render such judgment the motion to vacate is overruled and final judgment entered in favor of appellant thereon.

Judgment reversed and final judgment entered in favor of appellant.

CARTER and BENNETT, JJ, concur.